IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |  |
|---|---|---|
| CHRISTIN WILEY, | ) | |
| Plaintiff, | ) ) | |
|  | ) | Civil No. 1:14-cv-235 |
| -v- | ) ) | Hon. Liam O'Grady |
| WEGMANS FOOD MARKETS, INC., | ) | |
| Defendant. | ) | |
|  | ) ) ) | |

## MEMORANDUM OPINION

### I.    Overview

This matter comes before the Court on defendant Wegmans Food Markets' motion for summary judgment. (Dkt. No. 32). The plaintiff filed an opposition, (Dkt. No. 39), and the defendant replied. (Dkt. No. 41). The Court heard oral argument on November 21, 2014. Having carefully considered the pleadings and exhibits submitted by the parties, the Court GRANTED defendant's motion for summary judgment in an order dated December 5, 2014. (Dkt. No. 45). That motion was granted for the reasons set forth below.

### II.    Background

This case arises out of a slip and fall in a Wegmans grocery store.[1] On January 1, 2011, plaintiff Christin Wiley (Wiley) visited a Wegmans store in Woodbridge, Virginia. (Dkt. Nos. 40 at 1, 33 at 1). Another customer evidently broke a wine bottle near the deli area and the wine spilled onto the floor. (Dkt. No. 40-3 at 11). Surveillance footage shows that the spill occurred

---

[1] The plaintiff has sued Wegmans Food Markets, Inc. and Wegmans Food Market (Potomac). The defendant has noted that Wegmans Food Market (Potomac) is not a separate entity, but is "only a location at which Wegmans Food Markets, Inc. operates a store." (Dkt. No. 1 at 2). Accordingly, the Court will treat the defendants as a single entity for purposes of this motion.

sometime between 18:36 and 18:37. (Dkt. No. 33-2). Around 18:37:30, deli employee Ivan

Cespedes began to clean up the mess on the floor with paper towels or cloths. *Id.* Another

employee placed a yellow caution cone over the area of the spill and then left. *Id.* Cespedes

remained at the scene and continued to wipe the floor with paper towels. *Id.* He then arranged

the paper towels in a small pile, picked up the cone, and placed the cone over the pile. *Id.*

Cespedes then walked away from the area at around 18:38:07. *Id.*

The words and images on the cone are not legible from the video. Wegmans has offered

evidence that their cones were emblazoned with the word "CAUTION" in three different

languages and contained a picture of a person appearing to slip and fall. (Dkt. No. 33-3 at 1). It

is not clear, however, from the record whether this was the exact cone used at the spill. A

Wegmans employee testified that Wegmans typically used cones that provide warnings such as

"Cautious [sic], Wet Floor, Be Careful," in two or three languages. (Dkt. No. 40-6 at 6).

Although the exact dimensions of the cone are not evident from the record, the footage shows the

cone was quite large. (Dkt. No. 33-2). The plaintiff testified that the cone was bright yellow,

that she had seen yellow warning cones and signs before, and that warning signs are usually

yellow. (Dkt. No. 33-4 at 6-7). Wiley also testified that nothing distracted her attention or

prevented her from seeing the cone, other than the fact that she was looking away at the nearby

shelves. (Dkt. No. 33-4 at 7).

At 18:39:10, as Wiley walked through the area, she slipped and fell. (Dkt. No. 33-2).

She fell very close to the cone, and it appears that she may have even touched the cone as she

fell. *Id.* The video shows that she was looking at the refrigerated section near the spill area and

did not appear to see the yellow warning cone. *Id.* No employees were standing within the

camera's view when Wiley fell. *Id.* Plaintiff testified in her deposition that the floor was wet

2

when she fell. (Dkt. No. 40-2 at 7). Wiley also stated she was looking at the shelves because she was shopping for sauce. (Dkt. No. 33-4 at 4). It appears from the video and her deposition testimony that she did not look in the direction in which she was walking even after she turned her head and body toward the cone. (*Id.* at 4-5; Dkt. No. 33-2). Plaintiff testified that she could not recall having seen the cone before she fell. (Dkt. Nos. 33-4 at 5, 40-2 at 8). She further stated that she was not aware how close she was to the cone, and that the first time she noticed the cone was after she had fallen. (Dkt. No. 33-4 at 5). After the fall, she got up quickly and left the camera's view. (Dkt. No. 33-2).

At about 18:40:10, approximately two minutes after Cespedes left the scene and three to four minutes after the spill occurred, maintenance worker Jeremy Miduch arrived with a cleaning cart to begin mopping and drying the spill area. (Dkt. No. 33-2). Miduch appeared to continue cleaning the area until approximately 18:51. *Id.* At around 18:55:30, he left the scene with the cleaning cart and the warning cone. *Id.*

Miduch stated in his deposition that there was no employee stationed at the spill when he arrived to clean the area. (Dkt. No. 40-7 at 6). He also testified that pursuant to Wegmans policy, an employee who discovers a spill should remain at the site until a maintenance worker arrives. (Dkt. No. 40-7 at 4). In her deposition, Wiley testified that she encountered Miduch as she was leaving the scene and he was approaching. (Dkt. No. 40-2 at 7-8). She said that he told her an employee should have been stationed at the spill until his arrival. *Id.* Cespedes also testified in his deposition and in an affidavit that his supervisor, Brenda Stockslager, told him that an employee should have remained at the scene until the arrival of a maintenance worker, pursuant to Wegmans policy. (Dkt. No. 40-3 at 9, 11). Stockslager's deposition testimony tends to contradict this assertion. (Dkt. No. 40-8 at 4-5).

3

Plaintiff alleges that she sustained serious injuries as a result of the fall. (Dkt. No. 1-4 at 8). She filed suit in the Circuit Court of Prince William County, Virginia. (Dkt. No. 1-4 at 6-9). On March 6, 2014, the defendant removed the case to federal court on the basis of diversity jurisdiction. (Dkt. No. 1).

## III.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. As the Supreme Court has explained, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Finally, in making a summary judgment determination, the court must view the facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citations omitted).

## IV.    Discussion

Wegmans has moved for summary judgment on the single count of negligence alleged in Wiley's complaint. Wegmans argues that the plaintiff has not established a prima facie case of negligence in this premises liability action. The Court finds that resolution of this motion turns on two issues: (1) whether Wegmans failed to clean up the spill in a reasonable time; and (2) whether Wegmans adequately warned customers about the spill.

4

This Court is sitting in diversity and will thus apply Virginia law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938). "The rules applicable to slip-and-fall cases are well settled" in Virginia. *Winn–Dixie Stores, Inc. v. Parker*, 240 Va. 180, 182 (1990). Premises owners owe a duty to exercise ordinary care toward invitees on the premises. *See id.* (citing *Colonial Stores v. Pulley*, 203 Va. 535, 537 (1962)). Discharging this duty requires stores:

> to have the premises in a reasonably safe condition for [an invitee's] visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it was unknown to her, but was, or should have been, known to the defendant.

*Colonial Stores*, 203 Va. at 537 (citations omitted). *See also Winn-Dixie*, 240 Va. 180 at 182.

However, because store owners are not insurers of the invitee's safety, there is no duty to warn of dangers that are "open and obvious to a person exercising reasonable care for his own safety." *Gottlieb v. Andrus*, 200 Va. 114, 117 (1958) (citations omitted); *Colonial Stores*, 203 Va. at 538 (citations omitted). "Nor [is the defendant] required to remove the foreign substance in less time than ordinarily required for such a task." *Great Atlantic & Pac. Tea Co. v. Rosenberger*, 203 Va. 378, 380 (1962). Ordinarily, negligence is an issue "to be decided by a fact finder" and should be decided as a matter of law "[o]nly when reasonable minds could not differ." *Kimberlin v. PM Transport, Inc.*, 264 Va. 261, 266 (2002) (citations omitted).

### A. Wegmans Cleaned the Spill in a Reasonable Amount of Time.

The defendant had a duty "to remove, within a reasonable time, foreign objects from its floors" of which the defendant had actual or constructive knowledge. *Colonial Stores v. Pulley*, 203 Va. 535, 537 (1962). Wegmans had to "remove the substance without unreasonable delay,"

5

but was not required to remove the spill "in less time than ordinarily required" to do so. *Great Atlantic & Pac. Tea Co. v. Rosenberger*, 203 Va. 378, 380 (1962). Neither party in the present case disputes that the spill constituted a foreign object of which Wegmans had actual knowledge. "However, merely showing that a business owner had actual or constructive notice of a hazardous condition is not sufficient to demonstrate liability. Instead, the plaintiff must demonstrate that the defendant acted unreasonably in response to the hazardous condition of which it had notice." *Eure v. Kroger*, No. 7:11-cv-00190, 2012 WL 896347, at *6 (W.D. Va. Mar. 15, 2012).

In *Eure v. Kroger*, the plaintiff slipped and fell in a Kroger grocery store. *Id.* at *2. A Kroger employee discovered a spill over a large area of the floor, cleaned the area using paper towels and a mop, and placed a yellow warning cone in the middle of the spill area. *Id.* at *1. The employee stated in his deposition "that the floor was not completely dry, but was still moist, after he finished mopping up the spill." *Id.* Twenty-one minutes elapsed between the employee leaving the area and the time of the plaintiff's fall. *Id.* at *2. Based on the time the spill was discovered, at least 36 minutes elapsed between the occurrence of the spill and the plaintiff's fall. *Id.* at *1-2. The court granted summary judgment because Kroger "satisfied its duty of ordinary care by mopping up the spill and placing a warning cone only several feet from where Eure later slipped and fell." *Id.* at *7.

The surveillance footage shows that Wegmans employees discovered the spill within approximately one minute of its occurrence. Immediately, one employee placed a warning cone on the area while another employee began to wipe the spill. Those two employees then left and two minutes later, a maintenance worker arrived with a cart of cleaning tools to mop the spill. Thus, there were two levels of response to the spill within three to four minutes of its occurrence:

(1) the two employees who wiped the area and placed a warning cone over it; and (2) the maintenance worker who performed a more thorough cleaning. Given the speed of this response, a reasonable juror could not find that Wegmans failed to clean the spill in a reasonable amount of time.

Nor has plaintiff presented evidence that the defendant's removal of the spill was deficient for some other reason. Although there is evidence that the floor was still wet after Ivan Cespedes cleaned the spill area, the duty to exercise ordinary care does not require the defendant to completely remove the spill "in less time than ordinarily required." *Great Atlantic & Pac. Tea*, 203 Va. at 380 (1962). Rather, the dangerous condition must be removed within a reasonable time. Only two minutes elapsed between Cespedes leaving the scene and Jeremy Miduch arriving to thoroughly clean the area. Wiley fell approximately one minute after Cespedes left the area. This is a much smaller amount of time than in *Eure*, where the floor was still wet after the employee cleaned it and the plaintiff fell twenty-one minutes after the employee left the scene. *Eure*, 2012 WL 896347 at *2. Moreover, the area was marked with a warning cone during Cespedes' absence.

Although it is certainly unfortunate that the plaintiff fell before the spill was completely removed, there are no facts from which a reasonable jury could conclude that the defendant acted unreasonably in cleaning the spill. *See generally Grim v. Rahe*, 246 Va. 239, 243 (1993) (stating that "[i]f we imposed a duty upon [defendant] to discover *and remedy* this broken fixture when it might have been broken minutes before [plaintiff's] injury, we would effectively require [defendant] to insure its customers against injury by such fixtures that are not inherently dangerous if unbroken") (emphasis added). Wiley fell only two to three minutes after the spill occurred. To require Wegmans to completely rectify a dangerous condition that occurred almost

7

"an instant before the plaintiff" encountered it would be tantamount to requiring the defendant to insure its customers' safety. *Colonial Stores v. Pulley*, 203 Va. at 537.

## B. Wegmans Adequately Warned of the Spill

Premises owners are under a duty "to give an effective and timely warning of the existence of a hazardous condition" that is not open or obvious. *Shiflett v. Timberlake*, 205 Va. 406, 409 (1964). It is unclear from the record whether the parties dispute the color of the liquid that was spilled,[2] but the surveillance footage shows that the liquid appeared to be clear or light-colored. Therefore, for the purposes of analyzing the duty to warn, the Court assumes that the spill was not open and obvious. *Cf. Nuckoles v. F.W. Woolworth Co.*, 372 F.2d 286, 288 (1967) (finding that there was a jury question as to whether the danger was open and obvious where the plaintiff tripped over a box that was the same color as the floor and that may have been partially concealed).

It is undisputed that Wegmans placed a yellow warning cone over the area almost immediately after the spill occurred. There is thus no factual dispute regarding the timeliness of the warning. Wiley argues instead that the cone was insufficient and Wegmans should have stationed an employee near the spill instead of or in addition to the warning cone. (Dkt. No. 40 at 6). In making this argument, plaintiff primarily relies on testimony from Wegmans employees indicating that Wegmans had a policy or practice of requiring employees to remain at spills until a maintenance worker arrived. This Court previously ruled that evidence of Wegmans' private standards was inadmissible for the purpose of determining the standard of care. (Dkt. No. 30).

The plaintiff argues that the evidence of Wegmans' policies or practices should be admissible to show that Wegmans knew that customers might fail to see a warning cone. (Dkt.

---

[2] When asked whether she recalled the color of the wine, Wiley testified as follows: "I have no idea. I'm assuming - - everyone is saying red, but if it was red, I would have been stained in red wine." (Dkt. No. 33-4 at 5).

No. 40, 3-4). Citing *RGR v. Settle*, No. 130633, 764 S.E. 2d 8, slip op. at 20 (Va. Oct. 31, 2014) (citations omitted), the plaintiff argues that "[w]hether reasonable care was exercised depends upon what a reasonably prudent person, with knowledge of the circumstances, ought to have foreseen in regard to the consequences of his act or omission." Plaintiff's reliance on *RGR v. Settle* is misplaced. Settle was a truck driver who was fatally injured when a train struck his vehicle. *Id.* at 13. In relevant part, the Supreme Court of Virginia held that "the jury was entitled to infer that RGR breached its duty of reasonable care because a reasonably prudent person ought to have foreseen the consequences of stacking the lumber" in a manner that obscured Settle's view of the train tracks. *Id.* at 21. The majority rejected the defendant's "attempts to interject premises liability concepts" into the case. *Id.* at *18. The court emphasized that "premises liability was not an issue and that the case was not tried on that basis. To suggest otherwise is simply incorrect." *Id.* *RGR v. Settle* thus does not provide support for the plaintiff's argument that the foreseeability standard should govern in this premises liability action.

The Supreme Court of Virginia has previously considered the standard to be applied in premises liability cases. In *Ashby v. Faison & Associates*, 247 Va. 166, 170 (1994), the court rejected a similar argument to the one the plaintiff here makes. Ashby slipped and fell on water that had been tracked in due to inclement weather. *Id.* at 168. Relying on *Memco Stores, Inc. v. Yeatman*, 232 Va. 50 (1986), Ashby argued that foreseeability was the appropriate test for determining whether the defendants breached their duty to maintain the premises. *Id.* at 169.

The plaintiff in *Yeatman* slipped on a slimy leaf on the floor of the defendant's store. *Ashby*, 247 Va. at 169 (citing *Memco Stores, Inc. v. Yeatman*, 232 Va. 50, 53-54 (1986)). The court held that the defendant had a duty to avoid risks that it "could have foreseen" given the

9

circumstances that it "knew or should have known." *Yeatman*, 232 Va. at 55. The *Ashby* court found that *Yeatman* was "distinguishable on its facts" because the dangerous condition in that case "resulted from the affirmative conduct of the defendant in moving the plant from the patio where plants were normally sold and placing it on a furniture display in a manner that caused leaves to fall in the aisle where the plaintiff slipped and fell." *Ashby*, 247 Va. at 169 (citing *Yeatman*, 232 Va. at 53-54). By contrast, "there [was] no evidence of affirmative conduct on the part of the defendants that caused water to collect on the lobby floor" in *Ashby*. *Ashby*, 247 Va. at 169. The conduct complained of—that a third party had tracked water into the building and the defendants had failed to remove the water or warn of its presence—was "passive conduct." *Id.* at 170.

> In these circumstances, we think the applicable standard is whether the defendants had actual or constructive notice, that is, whether they knew or should have known, of the presence of the water that caused Ashby's fall and failed to remove it within a reasonable time or to warn of its presence.

*Id.* (citing *Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 184 (1990)).

As in *Ashby*, there is no evidence that Wegmans affirmatively created the dangerous condition. It is undisputed that another customer spilled wine on the floor. Wiley's negligence claim proceeds on the theory that Wegmans failed to adequately respond to the spill. Thus, it is apparent that the standard to apply is the passive conduct standard. Because the parties do not dispute that Wegmans had actual notice, the issue is whether Wegmans provided a reasonable warning under the circumstances.

Even considering the evidence of Wegmans' private procedures, the outcome of the Court's analysis does not change. Whether Wegmans failed to follow its own rules is not the dispositive issue in this case. The correct issue is whether there is evidence that Wegmans failed to provide a reasonable warning under the circumstances. *See, e.g., Ashby v. Faison &*

*Associates*, 247 Va. 166, 170 (1994) (finding that the defendants were not negligent despite plaintiff's argument that the defendants "failed to comply with their own precautionary measures on the day in question in that they did not set out the warning cones or have the porter standing by the entrance to mop the water") (internal quotation marks omitted).

Viewing the facts in the light most favorable to the plaintiff, the Court finds that the record is devoid of facts showing that the warning cone was insufficient under the circumstances. In *Casas v. Wal-Mart Stores, Inc.*, 201 F.3d 435, 1999 WL 999434, *3 (4th Cir. 1999) (unpublished table decision),[3] the Fourth Circuit vacated a grant of summary judgment, finding that there could be reasonable disagreement regarding whether Wal-Mart had adequately warned customers of the wet carpet on the floor. Casas testified that there was one yellow warning cone approximately twelve feet from where she fell. *Id.* at *2. By contrast, the cone in the instant case was placed within a very short distance of where the plaintiff fell. Indeed, the footage shows that Wiley was so close to the cone that her body may have touched it during her fall.

The plaintiff also relies on *Douglas v. Kroger*, No. 4:13-cv-97, 2014 WL 504717, slip copy at *7 (E.D. Va. Feb. 7, 2014) a slip-and-fall case where the court denied summary judgment. In that case, a Kroger employee placed a cone to warn customers about tracked-in water due to rainy weather, but this was not the dangerous condition that caused Douglas' fall. *Id.* Instead, Douglas slipped on water that pooled on the floor due to a roof leak. *Id.* Although she fell "within several feet" of the warning cone, there was no testimony establishing that "the cone was related to the roof leak." *Id.* Further, the area around the cone appeared to have little or no water around it, while the area where Douglas fell contained puddles of water. *Id.* Additionally, the court found that reasonable jurors could conclude that "the placement of the

---

[3] This case arose under North Carolina law, but North Carolina law "mirrors Virginia law with respect to the liability of premises owners for hazardous conditions." *Eure v. Kroger*, No. 7:11-cv-00190, 2012 WL 896347, at *6 (W.D. Va. Mar. 15, 2012).

cone 'created an aisle for [Douglas] to walk directly into the water' which was leaking from the ceiling." *Id.*

These facts are distinguishable from the case at bar. It is undisputed that Wegmans employees actually placed the cone in response to the spill that Wiley slipped on. Further, there is no evidence in this case that the cone's placement provided a confusing directive, as there was in *Douglas*.

In *Shiflett v. Timberlake*, the court reinstated a jury verdict for the plaintiff where the plaintiff slipped and fell on water that had been tracked into a drugstore due to inclement weather. *Shiflett*, 205 Va. 406, 411 (1964). The defendant had not provided any warning about the wet floor and the plaintiff was distracted from the dangerous condition because she was looking at a "bright display on a nearby counter." *Id.* The *Eure* court also acknowledged that "the diversion of a person's attention" is a relevant factor, but found that there were no facts supporting Eure's argument where her view of the cone was "unobstructed." *Eure v. Kroger*, 2012 WL 896347 at *7, n. 4.

The record shows that the cone placed by Wegmans in this case was large, bright yellow, and located in the immediate vicinity of the spill without any person or object obstructing plaintiff's view of it. It is undisputed that the cone had some writing and/or images on it, and the record tends to show that the writing was likely something to the effect of "Caution" or "Wet Floor." Wiley testified in her deposition that she did not recall seeing the cone. She was not looking in the direction where she was walking because she was looking at the shelves, but the record does not disclose evidence of bright or distracting displays that attracted her attention away from the cone. Wiley conceded that nothing obstructed her view of the cone or prevented her from seeing it, a fact corroborated by the surveillance footage. Furthermore, she testified that

12

she had previously seen yellow cones and understood such cones to indicate warnings. The plaintiff evidently failed to see this cone because she was looking at the shelves, but there is no evidence from which a reasonable juror could conclude that Wegmans placed the cone in an unreasonable manner. There is thus no genuine dispute of material fact regarding whether Wegmans failed to provide a timely and effective warning. To hold otherwise would place the defendant in the position of insuring its customers' safety under all circumstances, a conclusion foreclosed by Virginia law.

## V.   Conclusion

Because the Court finds that there is no evidence from which a reasonable juror could conclude that the defendant was negligent, it is not necessary to address the issue of contributory negligence. For the foregoing reasons, it is ORDERED that the defendant's motion for summary judgment is GRANTED. The Court hereby enters judgment in favor of defendant and dismisses this action in its entirety.

Date:   December 4, 2014
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

13